2018-1180; 2018-1181

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

adidas AG,

*Appellant,*

v.

Nike, Inc.

*Appellee.*

---

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board
in Nos. IPR2016-00921 and IPR2016-00922

---

**REPLY BRIEF FOR APPELLANT ADIDAS AG**

---

Mitchell G. Stockwell
Vaibhav P. Kadaba
Tiffany L. Williams
Michael T. Morlock
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
(404) 815-6500
(404) 815-6555
mstockwell@kilpatricktownsend.com
wkadaba@kilpatricktownsend.com
tiwilliams@kilpatricktownsend.com
mmorlock@kilpatricktownsend.com

*Counsel for Appellant*

## CERTIFICATE OF INTEREST

Counsel for adidas AG certifies the following:

1. The full name of every party represented by us is:

   **adidas AG**

2. The name of the real party in interest represented by us is:

   **Same.**

3. Parent corporations and publicly held companies that own 10% or more of the stock in the party:

   **None.**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   **None.**

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

   **14-1719 Nike, Inc. v. adidas AG (Chen)**
   **IPR2013-00067 adidas AG v. Nike, Inc.**

Date: May 1, 2018

/s/ Mitchell G. Stockwell
Mitchell G. Stockwell

## TABLE OF ABBREVIATIONS

| Abbreviation | Explanation |
|---|---|
| adidas | Appellant adidas AG (Petitioner below) |
| Nike | Appellee Nike, Inc. (Patent Owner below) |
| Board | Patent Trial & Appeal Board, United States Patent & Trademark Office |
| Opening | Opening Brief of Appellant adidas AG (ECF No. 17) |
| Response | Corrected Brief of Appellee Nike, Inc. (ECF No. 22) |
| POSITA | Person of Ordinary Skill in the Relevant Art at the Time of the Invention |
| The ‘598 Patent | U.S. Patent No. 7,814,598 to Dua *et al*. |
| The ‘749 Patent | U.S. Patent No. 8,266,749 to Dua *et al*. |
| The Challenged Patents | The ‘598 Patent and the ‘749 Patent |
| Nishida | U.S. Patent No. 5,345,638 to Nishida. |
| Reed | U.S. Patent No. 3,985,003 to Reed. |
| Holden Declaration | Declaration of Lenny M. Holden, submitted as Exhibit 1003 in support of the Petitions. |
| Base Claims or Non-Unitary Construction Claims | Claims 1-3, 5-10, and 12-13 of the ‘598 Patent and Claims 1-9 and 12-19 of the ‘749 Patent |
| Unitary Construction Claims | Claims 4 and 11 of the ‘598 Patent and dependent claims 11 and 21 of the ‘749 Patent. |

# TABLE OF CONTENTS

**Page**


CERTIFICATE OF INTEREST ........................................................................ i

TABLE OF ABBREVIATIONS ....................................................................... ii

SUMMARY OF ARGUMENT ........................................................................ 1

ARGUMENTS IN REPLY ............................................................................. 4

I. Nike's Efforts to Rewrite the Board's Fact-Finding Fail. ................................ 4

A. The Board Correctly Found that Reed is Not Limited to Pre-Seamed Embodiments. ........................................................ 4

B. The Board Correctly Found that Reed Encompassed Footwear, which would Include Forming Multi-layer Shoe Uppers as Nishida also Discloses. ........................................ 8

C. The Board's Findings Confirm that the *Graham* Factors Point Toward Obviousness as a Matter of Law. .................................. 9

II. The Base Claims are Obvious as a Matter of Law. ..................................... 13

A. Nike Failed to Address the Legal Flaws in the Board's Motivation Analysis. ........................................................ 13

B. Nike's Arguments About "How and Why" the References are Combined Cannot Overcome the Board's Errors. ............................................................... 17

C. Nike Failed to Address the Actual Legal and Factual Errors adidas Identified in the Board's Treatment of the Base Claims. ............................................................... 19

D. The Board's Quotation of Mr. Holden's Testimony and Inoperability Finding Applies Only to the Unitary Construction Claims. ............................................................... 22

III. The Unitary Construction Claims are Also Obvious. .................................... 24

A. Nike Failed to Identify Any Substantial Evidence Concerning Lack of Motivation to Combine Reed and Nishida to Meet the Unitary Construction Claims. ....24

B. The Board's Criticism of Mr. Holden's Testimony is Error Given the Unitary Construction Claims do not Require Knitting "a Preseamed and Preformed Footwear Upper" on a Circular Knitting Machine. ....26

C. adidas's Evidence Establishing a *Prima Facie* Case Cannot Be Rebutted with Irrelevant Cross-Examination Testimony or Attorney Argument Concerning Inoperability. ....29

IV. Nike's Alternative Bases for Affirmance are Legally Improper ....31

CONCLUSION ....32

CERTIFICATE OF SERVICE ....33

CERTIFICATE OF COMPLIANCE ....34

# TABLE OF AUTHORITIES

## Cases

*ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)....................17

*Aqua Prods., Inc. v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017)....................16

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*,
776 F.2d 281 (Fed. Cir. 1985)....................30

*Bosch Auto. Serv. Sols., LLC v. Matal*,
878 F.3d 1027 (Fed. Cir. 2017)....................27

*Burlington Truck Lines, Inc. v. United States*,
371 U.S. 156 (1962)....................31

*Corning v. Fast Felt Corp.*,
873 F.3d 896 (Fed. Cir. 2017).................... passim

*DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*,
464 F.3d 1356 (Fed. Cir. 2006)....................12

*In re Applied Materials, Inc.*,
692 F.3d 1289 (Fed. Cir. 2012)....................31

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016).................... 18, 27

*In re Sang-Su Lee*,
277 F.3d 1338 (Fed. Cir. 2002)....................22

*In re Tzipori*,
316 F. App'x. 975 (Fed. Cir. 2008) ....................11

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016).................... 13, 15, 16, 21

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007).................... 13, 14, 16, 17

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........................................................................ 24, 31

*Navico Inc. v. ITC*,
696 F. App'x 989 (Fed. Cir. 2017) ........................................................30

*Nike, Inc. v. adidas AG*,
812 F.3d 1326 (Fed. Cir. 2016)..............................................................16

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
719 F.3d 1346 (Fed. Cir. 2013)..............................................................30

*Outdry Techs. Corp. v. Geox S.p.A.*,
859 F.3d 1364 (Fed. Cir. 2017)..............................................................18

*Plas-Pak Indus., Inc. v. Sulzer Mixpac AG*,
600 F. App'x 755 (Fed. Cir. 2015) ........................................................29

*Power Integrations, Inc. v. Lee*,
797 F.3d 1318 (Fed. Cir. 2015)......................................................... 26, 31

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015)................................................................27

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) ...............................................................................31

*Securus Techs., Inc. v. Glob. Tel*Link Corp.*,
701 F. App'x 971 (Fed. Cir. 2017) ........................................................17

## SUMMARY OF ARGUMENT

Nike's efforts to divert this Court from the Board's findings demonstrate adidas's central point: the Board's factual findings confirm, rather than undermine, the appropriate legal conclusion – the challenged claims are obvious.

Nike argues that the distinction between Reed's "preseamed" embodiments and Nishida's "unseamed" embodiments is dispositive, but its nomenclature simply aims to confuse the issue. adidas relied on embodiments of Reed that require: (1) cutting segments of a garment from the cylindrical textile structure, and (2) seaming those segments together to complete the garment. This is virtually identical to Nishida's cutting shoe layouts from a surrounding textile structure and then seaming them to create shoe uppers. The "post-cut" seaming in both references shows that using the system of Reed to produce sections that are then assembled and seamed to form a shoe upper, as taught by Nishida, would have been obvious as a matter of law. Yet the Board improperly determined that a skilled person would not be motivated to combine those references.

***The Base, Non-Unitary Construction, Claims***: The Board found that Reed is not limited to producing an entirely preseamed garment, e.g., tubular garments that can be cut from the textile structure in completed form. Reed expressly states that either single layer or multi-layer *sections* of garments may be produced on a circular knitting machine then cut and seamed into a garment. Nike argues that

this embodiment is preseamed, despite the necessity that the sections be seamed together to complete the garment. Regardless of such nomenclature, it is just like what Nishida discloses, where either a single or multiple layer layout is cut from a textile structure and seamed to form the final shoe upper. These were exactly the embodiments adidas relied on to show that a POSITA would extend Reed's disclosure, in view of Nishida's teaching, to more efficiently make a shoe upper on a wide tube circular knitting machine.

As to motivation, Nike agrees the Board held that the Base Claims encompass *both* preseamed and unseamed layouts. Response, 28. Nike's admission highlights the Board's fundamental legal error – it lost sight of the "objective scope" of the claims – which cover a method of making a shoe upper whether seamed or unseamed in whole or in part. Most critically, the claims encompass seaming *after* the upper is cut from the textile element. Nike's unsupported arguments about some "fundamental" difference between Reed and Nishida thus have no bearing on motivation to combine.

Because both the Board's inoperability finding and the Board's quotation of Mr. Holden's testimony was limited to its analysis of the narrower Unitary Construction Claims, the Board's decisions simply cannot, as a matter of law, support its ultimate judgment of non-obviousness for the broader Base Claims. The Board expressly determined the Base Claims encompassed both preseamed

and unseamed layouts. adidas presented ample evidence that a skilled artisan would apply Reed, in light of Nishida, to make a shoe upper, whether preseamed or not. On this record, the Court should reverse, but, at minimum, it should remand to have the Board actually address the full scope of the claims and the proffered motivations to combine.

***The Unitary Construction Claims***: Nike did not credibly dispute adidas's point that the Board applied a *de facto*, much narrower construction to the Unitary Construction Claims than its actual construction. In essence, the Board viewed those claims as requiring a three-dimensional shoe upper to be knitted in one piece without seams on a circular knitting machine. That is not what those claims require—they do not exclude all seams, but instead require that two areas of different texture anywhere within textile element be coupled without seams. Under the Board's actual construction, as a matter of law, the Unitary Construction Claims are obvious.

Nor can Nike salvage those claims with unsupported claims of inoperability. adidas established a *prima facie* case of obviousness and thus Nike bore the burden of production of evidence of inoperability. Nike presents only cross-examination testimony that is irrelevant to the limitations required by the claims, the description of the Challenged Patents, or the combination that Mr. Holden proposed. This testimony does not provide any evidence, much less substantial evidence, that the

combination of Reed and Nishida is inoperable. Under the correct legal standards reversal is appropriate, but, at minimum, this Court should remand.

## ARGUMENTS IN REPLY

### I. Nike's Efforts to Rewrite the Board's Fact-Finding Fail.

#### A. The Board Correctly Found that Reed is Not Limited to Pre-Seamed Embodiments.

Nike's brief rests on a broken foundation. Nike argues that "Reed does not disclose any unseamed embodiments of its invention," and "Reed never suggests its invention could be applied to footwear, or anything except for a preseamed, tubular garment." Response, 6, 42. But the Board found the exact opposite, stating that "Reed's teachings may be broader than preseamed garments and garment sections…." Appx32; Appx84. Reed is broader than what it "specifically refers to as the 'present invention' and encompasses 'the conventional methods involv[ing] superimposing two preexisting panels of material, forming a garment into those preexisting panels, cutting the shaped garment from the two preexisting panels, and then seaming the two cutouts together to create the final garment.'" Appx32; Appx83-84 (citations omitted).

Reed describes producing prelined *sections* of a garment, which are cut from the cylindrical structure for later assembly to form the complete garment. Appx1336, 3:61-68. In this embodiment, "outside tube 14 may be a normal decorative fabric wherein the inner tube 12 may be formed of material such as

lining." Appx1336, 3:64-66. The inner and outer tube sections are "simultaneously knitt[ed] and interknitt[ed] [forming] the two layers, [and] a step is saved by producing a section of garment which is prelined." Appx1336, 3:66-68. These "knitted structure[s] may form sections of a garment to be assembled in the regular manner." Appx1336, 3:62-63; *see also* Appx1337, 6:10-13 ("If the present process is used to preform an exterior decorative *fabric* having a lining …, the *severed sections* must be *assembled and seamed by standard practices*." (emphasis added)). This unequivocally describes that sections are first cut and then seamed together.

Nike even admits "Reed describes methods of making preseamed garments or preseamed *sections of garments*." Response, 2 (emphasis added). Nike's arguments against the existence of an unseamed embodiment in Reed are premised on somehow viewing pre-lined garment *sections* that must be later seamed to form a full garment as "preseamed." Nike uses the term preseamed in an attempt to conflate Reed's garment section embodiment with Reed's tubular garment embodiment in which a completed garment (e.g., a dress) is produced on the circular knitting machine. Appx1335, 1:64-2:1. But the garment section embodiment is different; Reed makes clear that the lined *sections* must first be cut out, and then "assembled and seamed by standard practices" to create the completed garment. Appx1337, 6:10-13. As Mr. Holden's unrebutted testimony

confirmed, the POSITA would understand that "Reed is describing panels of a garment having a substantially planar configuration after removal from the surrounding circular knitted textile structure, which are then sewn together in a conventional manner to form a complete garment." Appx1221-1222, ¶105.

Nike nonetheless attempts to undercut the Board's finding that Reed discloses forming garment sections and then seaming them together by urging that the Board was simply referencing "one sentence describing prior art in the background section of the specification," which sentence Nike quotes as present in Appx1335, 1:13-19. Response, 11. Notably, Nike underlines the following quote from the Board's decision, but selectively omits the record citations (*italicized*) the Board made:

> Although this description may limit the scope of Reed's recited methods, the scope of Reed's teachings is broader than what Reed specifically refers to as the "present invention" *(Ex. 1006, 1:8-11)* and encompasses "the conventional methods involv[ing] superimposing two preexisting panels of material, forming a garment into those preexisting panels, cutting the shaped garment from the two preexisting panels, and then seaming the two cutouts together to create the final garment." *(PO Resp. 20 (citing Ex. 1006, 6:18-22)).*

*Compare* Response, 11 *with* Appx32; Appx83-84.

The Board did not cite Appx1335, 1:13-19. Instead, the Board's first cite to Appx1335, 1:8-11, is to Reed's "Field of the Invention," which makes no mention of "prior art." The Board's finding regarding the breadth of Reed relies on its cite to Appx1337, 6:18-22, which explains, "[f]rom the *preceding description* of the

preferred embodiments, it is evident that the objects of the invention are obtained to produce a preformed and preseamed fabric on a circular knitting machine so as to reduce time, cost and labor involved in making garments." *Id*. (emphasis added). The immediately "preceding description" referenced here is reproduced below. It describes the embodiment where prelined sections are produced and then severed so that they can be assembled using traditional seams.

> If the present process is used to preform an exterior decorative fabric having a lining or inner-lining or interfacing attached thereto, *the severed sections must be assembled and seamed by standard practices*. By providing the lining or interfacing already attached to the section, a substantial amount of time is saved in measuring, marking and cutting the original fabric and lining or interlining as well as stitching them together.

Appx1337, 6:10-17 (emphasis added).

Thus, the Board recognized Reed's disclosure of "seam[ing] together 'by standard practices' to form a garment." Appx17; Appx67. It similarly confirmed that "the scope of Reed's teachings is broader than what Reed specifically refers to as the 'present invention'" and encompasses Reed's embodiments that require post-cut seaming, which were the ones adidas relied upon as unseamed embodiments. Appx32; Appx83-84; Opening 7, 20, 24.

### B. The Board Correctly Found that Reed Encompassed Footwear, which would Include Forming Multi-layer Shoe Uppers as Nishida also Discloses.

The Board expressly found that adidas established "Reed alone, as well as the combined teachings of Reed and Nishida, teach or suggest a method of manufacturing an article of footwear." Appx23; Appx73. Nike nonetheless urges that "Reed never suggests its invention could be applied to footwear, or anything except for a preseamed, tubular garment." Response, 42. The Board's contrary finding is significant because, like Reed, Nishida also discloses a multi-layer embodiment. Indeed, the Board found that "Nishida's web of material 1 may be 'knitted in two or more layers or can be especially thick or additionally embroidered.'" Appx20-21 (quoting Appx1364, 3:66-4:1); Appx70.

Nike seeks to misdirect from this factual finding as well, by urging that Nishida does not disclose preseaming and that adidas is somehow now arguing otherwise. Response, 8-9. That is false and, in fact, it is Nike's position that is inherently contradicting. On the one hand, Nike argues a multi-layer lined garment section in Reed is "preseamed," citing Reed's description of "simultaneously knitting and interknitting the two layers" to "produc[e] a section of garment which is prelined." Response, 37 (citation and emphasis omitted). On the other hand, Nike says that a multi-layer upper in Nishida is unseamed (Response, 7-9) even though Nishida similarly describes that embodiment as "woven or knitted in two or

more layers." *Id*., 9. By contrast, adidas's point was and remains that, like Reed's multi-layer lined garment section, Nishida's multi-layer shoe upper is *not* preseamed. In both cases, the multi-layer fabric must be cut out and then seamed to form a garment – whether a dress or shoe upper. *See, e.g.*, Appx1337, 6:10-13; Appx1364, 3:37-39.

### C. The Board's Findings Confirm that the *Graham* Factors Point Toward Obviousness as a Matter of Law.

Nike attempts to claim the Board's findings do not weigh toward obviousness. Nike points to only two examples, but neither hold water.

First, Nike does not contest adidas's point that Reed and Nishida each disclose cutting out sections of fabric and then seaming that material into a finished garment or upper. Instead, it urges that this finding is undercut because the Board also found that Reed is limited to the "seaming of garments or sections of garments *before* their removal" and that Nishida "teach[es] the seaming of the upper layout *after* its removal from the web of material." Response, 15-16 (quoting Appx33).

Such a "timing" distinction is immaterial. The Board construed the Base Claims to encompass "methods related to *both* pre-seamed *and unseamed garments and garment sections*." Appx35 (emphasis added); Appx87. Reed described lined garment segments that require seaming after removal from the textile structure and, under the Board's construction, Reed's disclosure of garment sections that are later seamed meets the Base Claims.

Likewise, the Unitary Construction Claims do not require a shoe upper that totally excludes seams. The claim language says only that "the textile element … include[s] a first area and a second area with a unitary construction." Appx12; Appx61-62. These claims simply require a textile element *with two areas* of different texture, anywhere within the textile element, that are coupled "without seams." Appx35; Appx87. The claims recite that such a textile element is then incorporated into a footwear upper, just like the Base Claims. *See, e.g.*, Opening 16, 18.

The Challenged Patents themselves describe post-cut seaming of sections to form a footwear upper. The Board explained that Figure 8 shows a textile element 40, in which certain sections do not require seams. Appx6; Appx55. But the shoe upper is created when "[e]dges 41a-44d are joined together as shown in Figures 3-5 to *form seams 51-54*, thereby forming at least a portion of a void for receiving the foot," as shown below. *Id*. (emphasis added).




Figure 8

Appx5; Appx54.

Second, the Board adopted adidas's description of level of skill in the art, yet Nike reprises its failed argument that the level of skill is low. Response, 13-15. Generally, "a more skilled artisan will have more general knowledge on which to rely in combining teachings from multiple references." *In re Tzipori*, 316 F. App'x. 975, 982 (Fed. Cir. 2008). Thus, "the proper question is whether the ordinary artisan possesses knowledge and skills rendering him *capable* of

combining the prior art references." *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1368 (Fed. Cir. 2006).

Here, the Board's finding confirms that the POSITA's experience and multiple areas of knowledge would have supported combining Reed and Nishida. Indeed, the Board itself emphasized that a POSITA would have "*a broad understanding of shoemaking*, and an understanding of … *the available and varied ranges of typical construction methods within a product cycle*…." Appx9 (emphasis original); Appx59. The Board's emphasis on these points precisely dovetails with adidas's point that a POSITA would have been motivated to seam together Reed's multi-layer sections, once cut from the cylindrical structure, and incorporate them into footwear as Nishida teaches. Appx1239-1242, ¶131-138.

Finally, Nike claims that "[u]ntil filing this appeal, adidas never argued the level of skill in the art is 'high' or 'relatively high.'" Response, 14. Below, adidas directly rebutted Nike's arguments by reiterating the multiple areas of knowledge a POSITA had to acquire and explaining that this knowledge resulted in "a skill level far from 'low.'" Appx524; Appx556; *see also* Appx11; Appx61. The Board's *emphasis* on key aspects of the skill level confirms adidas's point, the level of skill is "relatively high."

## II. The Base Claims are Obvious as a Matter of Law.

### A. Nike Failed to Address the Legal Flaws in the Board's Motivation Analysis.

In addressing the *Graham* factors, Nike nowhere contested that the proposed combination met all of the claim elements or the absence of secondary considerations. Rather, Nike focuses on the proposition that adidas failed to prove motivation to combine the teachings of Reed and Nishida. Response, 26-28. But, as to this point, Nike failed to address the critical legal issue adidas raised: the interplay between the correct legal standard for motivation and the Board's claim construction. That is an issue of law. *See Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd*., 821 F.3d 1359, 1366-67 (Fed. Cir 2016) (the court "review[s] de novo, however, whether the Board 'fail[ed] to consider the appropriate scope of the ... patent's claimed invention in evaluating the reasonable expectation of success.'" (citation omitted)).

*KSR* controls the inquiry of determining whether motivation existed and demonstrates the Board's legal error. *KSR* held that, in assessing obviousness, "[w]hat matters is the objective reach of the claim." *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 419 (2007). That is because "subject matter can be proved obvious" by showing "a known problem for which there was an obvious solution encompassed by the patent's claims." *Id*. at 420. *KSR* identified two other key

errors in assessing motivation under the "objective" reach of the claims; both apply here.

First, there was an improper focus on the problem the patentee aimed to solve, whereas the correct legal inquiry considers "any need or problem known in the field of endeavor at the time of invention and addressed by the patent [that] can provide a reason for combining the elements in the manner claimed." *Id*. Second, *KSR* found legal error in assuming skilled artisans solving "a problem will be led only to those elements of prior art designed to solve the same problem." *Id*. Specifically, *KSR* held that "[r]egardless of Asano's primary purpose, the design provided an obvious example of an adjustable pedal with a fixed pivot point," and "[t]he idea that a designer hoping to make an adjustable electronic pedal would ignore Asano because Asano was designed to solve the constant ratio problem makes little sense." *Id*. at 420-21.

The same legal errors *KSR* identified apply to the Board's statement that adidas did not "address[] the differences between Reed and Nishida, specifically pre-seaming." Appx35; Appx86. The Base Claims encompass "methods related to both pre-seamed and unseamed garments and garment sections." Appx35; Appx87. That "objective claim scope," along with Reed's garment segment embodiments that require post-cut seaming, *necessarily* means that there was simply no reason to address any "preseaming" differences between Reed and

Nishida. *See Intelligent Bio-Systems*, 821 F.3d at 1367. Both Reed and Nishida teach post-cut seaming, which is encompassed by the claims and described in the specification. Whether Reed's sections are knitted together before cutting is irrelevant to the objective claim scope, and thus it was perfectly acceptable to use Reed's methods to produce a textile element for incorporation into an upper of an article of footwear, a limitation the Board agreed Nishida teaches. Appx24; Appx76. *See Corning v. Fast Felt Corp*., 873 F.3d 896, 900-03 (Fed. Cir. 2017).

Indeed, the Board's focus on whether "the prior art references …[would] operate as those references intended once combined …. is not the correct inquiry—one must have a motivation to combine accompanied by a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Systems*, 821 F.3d at 1367. The objective scope of the Base Claims extends to any type of footwear, even a simple slipper (Opening, 25) and plainly encompasses post-cut seaming to form footwear, even reciting the broad step of "incorporating" the knitted upper "into an article of footwear." Appx24; Appx76. Combining Reed and Nishida under these circumstances is particularly appropriate where the Board limited its inoperability conclusion to the Unitary Construction Claims, and thus did not identify *any* reason why Reed and Nishida could not be combined to reach the Base Claims, much less a reason that extends from the objective claim scope. *Infra* Section II(D).

Second, the combination of Reed and Nishida, given the "objective scope" of the claims, required only evidence of "any" motivation under *KSR*. adidas provided many—including motivation to extend Reed to footwear, reduce costs and save waste. Opening, 10-13. These motivations more than satisfied the legal standard. Indeed, this Court, when addressing motivation to combine with respect to Nishida in a challenge to a related Nike patent determined that "there is no question that skilled artisans knew of the desire to reduce waste when producing wearable, knitted shoe uppers because that problem is expressly recognized in Nishida." *Nike, Inc. v. adidas AG*, 812 F.3d 1326, 1338 (Fed. Cir. 2016) (*rev'd on other grounds, Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017)).

Finally, based on its argument that Reed is limited to preseamed, tubular garments, Nike claims that "fundamental differences between Reed and Nishida" justify ignoring the impact of the Board's claim construction. Response, 27-28. Section I, *supra*, confirms those differences are irrelevant, but, in any event, the argument violates *KSR*'s requirement to focus on the "objective" reach of the claim and is legal error. *See also Intelligent Bio-Systems*, 821 F.3d at 1366-67.

Indeed, the Board's, and Nike's, singular focus on preseaming ignored the broader teachings of Reed that disclosed cutting out and then seaming together multi-layer fabric sections. Appx1336, 3:61-68; Appx1337, 6:10-13. This is exactly the same as the second legal error *KSR* identified in assessing motivation.

Just as it would make "little sense" for the pedal designer to ignore Asano because it was focused on the constant ratio problem, so too as a matter of law it would make "little sense" for a shoe designer to ignore Reed's full disclosure and focus only on a preseamed tubular garment embodiment.

### B. Nike's Arguments About "How and Why" the References are Combined Cannot Overcome the Board's Errors.

Nike seeks to justify the Board's legal errors by urging that adidas had to show *both* why *and* how a POSITA would have combined Reed and Nishida. Response, 23; *see also* Appx36-37; Appx87-88. No such requirement exists; demanding one is directly contrary to *KSR*'s actual requirement of "an expansive and flexible approach," that combinations may be "obvious to try," and its warning to avoid "transform[ing] the general principle into a rigid rule that limits the obviousness inquiry." *KSR*, 550 U.S. at 415, 419, & 421.

Even the cases Nike cites contradict its argument. Nike cites to *Securus Techs., Inc. v. Glob. Tel*Link Corp.*, which merely criticizes a Petition that "failed to explain how ***or*** why the skilled artisan would combine the teachings…." 701 F. App'x 971, 977 (Fed. Cir. 2017) (emphasis added). Nike's Response at 48 then inaccurately quotes *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012), as stating: "'fail[ure] to explain how specific references could be combined rendered testimony "not sufficient and [] fraught

with hindsight bias.'" (Nike's modifications). The real quotation contradicts Nike's position:

> The expert failed to explain how specific references could be combined, which combination(s) of elements in specific references would yield a predictable result, ***or*** how any specific combination would operate or read on the asserted claims. Rather, the expert's testimony on obviousness was essentially a conclusory statement that a person of ordinary skill in the art would have known, based on the "modular" nature of the claimed components, how to combine any of a number of references to achieve the claimed inventions. This is not sufficient and is fraught with hindsight bias.

*Id.* (emphasis added).

Contrary to Nike's assertions, a challenger need only show that a POSITA would be motivated to make the combination, which does not require a detailed explanation of both how and why the combination is made. *See, e.g.*, *In re Nuvasive, Inc.*, 842 F.3d 1376, 1382-83 (Fed. Cir. 2016); *Outdry Techs. Corp. v. Geox S.p.A.*, 859 F.3d 1364, 1369 (Fed. Cir. 2017)

Nevertheless, adidas offered ample evidence of both why and how the references are combined. adidas indisputably articulated multiple reasons *why* Reed and Nishida would be combined, which the Board acknowledged. Appx25; Appx34-35; Appx76-77; Appx85-86. Likewise, even if the standard also required showing "how" to combine references, all that is required by the proposed modification is using Reed's knitting system, which the Board acknowledged can be used to knit footwear (Appx17; Appx23; Appx67; Appx73), to produce an

upper for incorporation into footwear. Mr. Holden explained how a POSITA would understand both that Reed's garment segments form "a substantially planar configuration after removal from the surrounding circular knitted textile structure, which are then sewn together in a conventional manner to form a complete garment," and similarly when "Nishida's layout is removed from the web of material (whether the web is circular or flat knit), the removed layout has a substantially planar configuration." Appx1221-1222, ¶105-106.

In both cases, the removed section is then seamed into a garment or upper. Such unrebutted evidence completely undermines Nike's "how" argument. Indeed, Reed states, "the types of programs used to form the final product is to be varied with the imagination of the programmer, as well as the type of product which may be formed" (Appx1337, 6:22-25), a point Mr. Holden confirmed in testifying, again unrebutted, that "Reed's process [could be used] to produce textile elements for all types of clothing, including forming textile elements to be incorporated into footwear as described in Nishida." Appx1240, ¶132; *see also* Appx1241-1246, ¶134-136.

### C. Nike Failed to Address the Actual Legal and Factual Errors adidas Identified in the Board's Treatment of the Base Claims.

adidas's Opening identified three errors the Board made in reasoning that adidas relied only on Reed's preseamed embodiments. Those were the Board's failure to address (1) Reed's post-cut seaming after garment segments were

created; (2) Nishida's teaching of a multi-layer segment before it is cut and then seamed; and (3) adidas's actual arguments. Opening, 35-36.

As to the first point, adidas noted that even Nike did not contest that adidas had relied on the post-cut seaming of garment sections. *Id*., 38. Nike nowhere contests that adidas relied upon Reed's "lined garment section" – which Nike apparently views as a preseamed embodiment, but which adidas views as an unseamed embodiment because, at minimum, after cutting it *must* be seamed with other sections to create a garment. And Nike cannot argue that adidas did not rely on Reed's disclosure of assembling garment segments via conventional seaming. *See supra* Section I(A).

As to the second point, Nike likewise does not contest that adidas relied upon Nishida's multi-layer embodiment. Instead, it attempts to distract by asserting that adidas is, for the first time, asserting that Nishida teaches preseaming. Response, 8. To the contrary, adidas viewed both Nishida's multi-layer embodiment and Reed's multi-layered, lined garment sections as unseamed embodiments because, in each case, seaming is required to complete the garment or upper. Opening, 7 Thus, regardless of the label applied to Reed's lined garment sections, or Nishida's multi-layer upper, Nike never disputed adidas's point that it relied on those virtually identical disclosures.

Finally, as to the third point, Nike simply says, first, the Board was justified in dismissing adidas's arguments as "directed to preseamed garments or preseamed garment sections" and, second, that the Board in any event cited to the embodiments adidas relied upon. Response, 29-30. But that is exactly the problem: the Board failed to actually grapple with adidas's arguments and its own claim construction, improperly choosing to focus on those aspects of Reed that discussed preseaming.

Any discussion of preseaming was legally irrelevant given the Board's construction of the Base Claims. Thus, the Board's dismissal of adidas's arguments as relying on "preseamed" garment sections is legal error under *Intelligent Bio-Systems*, 821 F.3d at 1367, and cannot provide substantial evidence.

Consider, for example, *Corning*, in which the Board determined that all elements were in the proposed combination, but that Corning "had failed to show that a skilled artisan would have combined" the references. 873 F.3d at 899-900. Corning argued the Board adopted an implicit, but overly narrow, construction requiring the claimed roofing material be "coated or saturated with asphalt or asphalt mix." *Id*. at 900. As a result, the Board found the references lacked such coating, that there was no "reason someone manufacturing a roofing product would ever look to a common printing or coating process" and "simply did not address roofing or building cover materials that would never be coated in asphalt." *Id*.

This Court reversed, finding that "[t]he exclusion of such materials from the scope of the claims is mistaken." *Id*. In view of the "objective scope" of the claim, "a skilled artisan would be motivated to combine the prior-art references to print nail tabs on building cover materials that are not (already or to be) asphalt coated or saturated." *Id*. at 903.

The same result applies here given the Board's express construction of the Base Claims to encompass "methods related to both pre-seamed and unseamed garments and garment sections." Appx35; Appx87. But, even if it did not, the Board's failure to consider the full disclosures of the references is error under the authority adidas identified. Opening, 39. Nike does not address that authority, instead simply urging that the Board's findings are purely factual. But that is no answer at all. The Board does not explain why it never grappled with the actual disclosures and arguments adidas presented. Similarly, the Board does not explain how it applied the claim scope either to the disclosures and arguments adidas advanced or even to the facts it did find. Those failures, at minimum, require remand. *See In re Sang-Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002).

### D. The Board's Quotation of Mr. Holden's Testimony and Inoperability Finding Applies Only to the Unitary Construction Claims.

The Board linked its criticism of Mr. Holden's testimony only to its findings as to the Unitary Construction Claims. Opening, 22; 47-48. Likewise, the Board's

flawed inoperability finding applied to only the Unitary Construction Claims. *Id.*, 22-23; 59. That is apparent from the Board's decisions themselves. *See, e.g.*, Appx37 (noting that Mr. Holden's testimony was "deficient with respect to the limitations in claims 4 and 11"); Appx88-89. Nike does not contest otherwise, and it nowhere explains how Mr. Holden's testimony or the inoperability discussion applies to the broader Base Claims.

Nor could Nike argue otherwise. In *Corning*, after the Board improperly narrowed the claimed subject matter before assessing obviousness, it rejected the challenger's arguments about the prior art by "reason[ing] that Owens Corning had not accounted for the differences in materials." 873 F.3d at 900. The Board also dismissed Corning's expert testimony with the observation that the expert did "'not provide any objective support for his opinion' about motivation to combine." *Id.* at 903 (citation omitted). But, after correcting the Board's construction, this Court held that such a statement "not only is dependent on the improperly narrow focus of Fast Felt's experts, but plainly contradicts the record … when the focus is widened, as it must be, to include substrates not (yet or to be) asphalt coated or saturated." *Id.* As in *Corning*, the Board erred by failing to apply its own broad construction of the Base Claims when finding no motivation to combine.

Finally, Nike does not link the Board's analysis of inoperability or criticism of Mr. Holden's testimony to the Base Claims, and it cannot given the actual

language of the Decisions. In agency cases, "post hoc rationalizations" do not matter because "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). To the extent the Board considered inoperability or Mr. Holden's cited testimony, it certainly did not articulate that such considerations applied to the broadly-construed Base Claims.

## III. The Unitary Construction Claims are Also Obvious.

### A. Nike Failed to Identify Any Substantial Evidence Concerning Lack of Motivation to Combine Reed and Nishida to Meet the Unitary Construction Claims.

As to adidas's proposed combination of using Nishida's teaching of unitary construction techniques in Reed, Nike failed to address adidas's arguments and instead made two inapplicable arguments that cannot support the Board's conclusion.

First, the Board's motivation analysis erred because its construction of the Unitary Construction Claims does not exclude *seams altogether*, but simply requires a textile element *with two areas* of different texture that are coupled "without seams." Opening, 54-55. Like the Base Claims, the construction encompasses seaming the edges of such a textile element to assemble the shoe upper.

Nike did not contest the scope of the Board's construction, but did claim the Board had no erroneous *de facto* construction requiring an entire shoe upper to be produced without seams. Nike failed to address the Board's statement adidas highlighted—namely, that the proposed combination would result in "seams of the kind taught by Reed [that] *apparently* are prohibited." Opening, 56 (emphasis added). That statement evidences a "*de facto*" construction similar to what this Court corrected in *Corning*. There, the Board construed the claim broadly, as "not requir[ing] an asphalt-coated substrate." 873 F.3d at 900 (citation omitted). But, as this Court held, "when evaluating Owens Corning's arguments regarding motivation to combine …, the Board made clear its understanding of its construction, and hence of the claims, as requiring materials that would eventually be coated with asphalt." *Id*. That was found to be error. The same error exists here given the statement that Reed's seams are "apparently" prohibited. To the contrary, the proposed combination, at most, involves seams along the outline of Reed's sections forming an upper where, given Nishida's teaching, the interior of the sections contains areas with different textures by varying stitches and without intervening seams. Such seams along the outlines are *not* "prohibited" by the claims, and the Board's contrary conclusion is erroneous. *Supra* Sections I(A)-(B).

Second, Nike merely repeated its argument that the Board found adidas failed to explain "how and why" a POSITA would make such a combination.

Response, 49-50. As demonstrated, *supra* at Section II(B), even if such a "how and why" requirement exists, adidas met it. Moreover, Nike did not contest adidas's explanation that Mr. Holden showed why a skilled artisan would make the combination or how one would do so. Opening, 56.

Rather than addressing the record, Nike instead urged that even if Nishida taught the required limitations, "the added limitation prohibiting seams between areas of different textures further diminished" any motivation. Response, 51. But that is not the justification the Board gave for finding insufficient evidence of motivation (Appx36-38; Appx88-90) and such *post-hoc* rationalizations cannot support the Board's judgment. *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015).

As to adidas's proposed combination involving extending Reed's disclosure to produce a shoe upper, Nike simply reprised its arguments that Reed only disclosed preseamed embodiments. As explained, those arguments were legally and factually erroneous. *See supra*, Section I.

### B. The Board's Criticism of Mr. Holden's Testimony is Error Given the Unitary Construction Claims do not Require Knitting "a Preseamed and Preformed Footwear Upper" on a Circular Knitting Machine.

The only other reason provided by the Board for its conclusion concerning the Unitary Construction Claims is the passage from Mr. Holden's cross-examination cited at Appx36; Appx87-88. Nike argues that this Court should

consider the Board's weighing of Mr. Holden's testimony for "abuse of discretion." Response, 22. This is incorrect. Nike's citations relate to when evidence was excluded by the Board or interpretation of Patent Office Regulations. *See Bosch Auto. Serv. Sols., LLC v. Matal*, 878 F.3d 1027, 1037 (Fed. Cir. 2017); *Redline Detection, LLC v. Star Envirotech, Inc*., 811 F.3d 435, 445 (Fed. Cir. 2015). The Board never excluded Mr. Holden's testimony, as Nike acknowledges. Response, 41. The substantial evidence standard is the correct standard. *In re Nuvasive, Inc*., 842 F.3d 1376, 1379 (Fed. Cir. 2016); *Corning* 873 F.3d at 903.

The only evidence given by the Board for its criticism of Mr. Holden's testimony is its finding that, given the exchange below, "Mr. Holden acknowledged that he had not been asked to nor had he considered how the teachings of [Reed and Nishida] could be combined." Appx36; Appx87.

> Q. (By Mr. Harris) And isn't it also true that nowhere in your declaration do you describe how a person of ordinary skill in the art *would create a preseamed and preformed footwear upper on a circular knitting machine*?
>
> THE WITNESS: I don't recall that there's any por- -- portion of that. Again, I was not asked to hypothesize on that particular point.
>
> Q. (By Mr. Harris) Okay. Just so I'm clear, you weren't asked to offer an opinion on how a person of ordinary skill in the art *would create a preseamed and preformed footwear upper on a circular knitting machine*; correct?
>
> A. I don't recall that I was asked that particular question.

Appx36; Appx87-88 (emphasis added, objection omitted).

These questions had nothing to do with the claimed subject matter, which does not require creating a "preseamed *and* preformed" upper *on a circular knitting machine*. Opening, 48. In essence, the question asked about making a preformed, or three-dimensional, tubular shoe upper on a circular knitting machine. These claims are not limited to such a method, as is apparent from the Board's own findings. *Supra* Section II(A); *Corning* 873 F.3d at 901.

Nor did the questions address the proposed combination. Mr. Holden proposed "modify[ing] Reed's method to include the additional features described by Nishida to produce a textile element for use in a shoe upper, as well as to produce a shoe incorporating such a textile element." Appx1242, ¶136. Mr. Holden explained that removing Nishida's layout from a circular knit web of material would result in a planar configuration, as does Reed's garment sections. Appx1221-1222, ¶105-106; Appx2062-2063, 168:7-169:4. This does not require producing an upper "*on*" a knitting machine that is both "pre-seamed *and* preformed." It simply required producing the textile element and then incorporating it, such as via seaming, into a shoe upper. In short, Mr. Holden's answer to questions that are irrelevant to the claims or proposed modification provides no relevant evidence of anything, much less substantial evidence to support the Board's decision. *See Corning* 873 F.3d at 903.

### C. adidas's Evidence Establishing a *Prima Facie* Case Cannot Be Rebutted with Irrelevant Cross-Examination Testimony or Attorney Argument Concerning Inoperability.

Despite Nike's protests, combining Reed and Nishida is fully consistent with this Court's holding that "combinations that change the basic principles under which the prior art was designed to operate, … may fail to support a conclusion of obviousness." *Plas-Pak Indus., Inc. v. Sulzer Mixpac AG*, 600 F. App'x 755, 757-758 (Fed. Cir. 2015) (citations and internal modifications omitted). Putting aside the telling use of "may" in *Plas-Pak*, the combination with Nishida *does not modify* the basic principles of Reed. The "fundamental purpose of Reed's methods is to produce pre-seamed, finished garments or *sections of garments*." Appx39 (emphasis added); Appx91. Reed expressly says that the "severed sections must be assembled and seamed by standard practices." Appx1337, 6:12-13. Thus, Reed's fundamental purpose is not altered by post-cut seaming of severed sections to form a garment. This is all adidas proposes, knitting sections on Reed's system that can be used to knit footwear, removing those sections and then assembling them to form a footwear upper, as is taught by Nishida. Appx17; Appx24-25; Appx67; Appx76-77.

Nike does not contest that it bore the burden on inoperability after adidas established a *prima facie* case. Response, 33. Nike instead argues adidas did not

establish such a case but, if it did, Nike either did not have to supply any evidence or that it in fact did so. *Id.*, 33-34. Neither proposition is correct.

First, the Board instituted IPR on a ground adidas advanced. Appx352; Appx376. That alone suggests a *prima facie* case because, if left unrebutted, it would point toward obviousness. *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1353 (Fed. Cir. 2013) ("the presumption of validity does not relieve the patentee of any responsibility to [oppose a]… prima facie case which, if left unrebutted, would be sufficient to establish obviousness."). Additionally, as detailed, the Board rejected Nike's arguments that claim elements were absent from the prior art (Opening, 14-19) and adidas identified substantial and unrebutted evidence of motivation to combine. Opening, 40-51.

Second, this Court has required evidence to establish inoperability. *Navico Inc. v. ITC*, 696 F. App'x 989, 998 (Fed. Cir. 2017); *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 291-92 (Fed. Cir. 1985). Nike alternatively claims to have submitted evidence of inoperability, but all of that evidence relates to the preseaming issues discussed above and has nothing to do with altering Reed's fundamental purpose, which *expressly* includes assembling severed sections to form a garment. Appx1337, 6:12-13. Likewise, the cited cross-examination testimony from Mr. Holden is irrelevant to the claims, the disclosure of the Challenged Patents, and the modification Mr. Holden actually

proposed. *See supra* Section III(B). Thus, Nike failed to offer any evidence to rebut the evidence and expert testimony adidas provided and the Board's operability finding cannot sustain its judgment.

## IV. Nike's Alternative Bases for Affirmance are Legally Improper.

Nike argues that this Court may affirm the Board's decision on several additional grounds not relied on by the Board. *See* Response, 54-61. Controlling precedent bars assertion of alternative grounds of affirmance of agency decisions. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). As this Court has held, "review of a patentability determination is confined to 'the grounds upon which the Board actually relied.'" *Power Integrations*, 797 F.3d at 1326 (quoting *In re Applied Materials, Inc*., 692 F.3d 1289, 1294 (Fed. Cir. 2012)). Accordingly, this Court has "no warrant to 'accept appellate counsel's *post hoc* rationalizations for agency action.'" *Power Integrations*, 797 F.3d at 1326 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). This Court cannot "supply a reasoned justification for an agency decision that the agency itself has not given." *Power Integrations*, 797 F.3d at 1326 (citing *Motor Vehicle*, 463 U.S. at 43).

Nike's *post hoc* rationalizations seek to challenge the Board's factual findings for which substantial evidence exists. Nike produced no evidence that a POSITA must have "meaningful knitting experience" (Response, 55), whereas adidas provided a detailed explanation, which was adopted by the Board. *See*

Appx1184-1186, ¶32-36; Appx1965-1970, 71:22-76:7. Nike did not address the substantial evidence supporting the other findings the Board made. *See, e.g.*, Appx26; Appx74-75. Nike's ineffective challenges simply illustrate adidas's point: the Board's factual findings confirm obviousness as a matter of law.

## CONCLUSION

For the reasons stated above and in adidas's Opening, the Board's judgments should be reversed or remanded.

Date: May 1, 2018

Respectfully submitted,

/s/ Mitchell G. Stockwell
Mitchell G. Stockwell

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing document with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system and served a copy on counsel of record, this 1st day of May, 2018 by the CM/ECF system and electronic mail.

/s/ Mitchell G. Stockwell
Mitchell G. Stockwell
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street N.E.
Suite 2800
Atlanta, GA 30309
(404) 815-6500
mstockwell@kilpatricktownsend.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a), the undersigned certified that this brief complies with the type-volume limitations of Fed. Cir. R. 32(a). Exclusive of the portion exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), this brief contains 6,975 words, as counted by the word-processing system used to prepare the brief.

/s/ Mitchell G. Stockwell
Mitchell G. Stockwell
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street N.E.
Suite 2800
Atlanta, GA 30309
(404) 815-6500
mstockwell@kilpatricktownsend.com